No. 98.—In the Matter of the Tutorship of the Minor Mattie E. Davis.—Opposition of Soniat's Executor to account of Tutorship.

The surviving widow of her deceased husband is entitled to the usufruct of all the community property until the second marriage. Act of March 25, 1844. The natural fruits or such as are the produce of industry, hanging by branches or by roots, at the time when the usufruct is open, belong to the usufructuary. C. C. 538. Therefore the surviving wife and usufructuary is not chargeable with, nor accountable to the heirs for the growing crop in the field and not gathered at the opening of the succession. Nor is she responsible in her capacity of natural tutrix to the minor heirs, for the rents and revenues arising from the use of the lands, stock and farming utensils, from the date of the opening of the succession up to the time that she contracts a second marriage.

The surviving widow having lost the usufruct by contracting a second marriage, is only accountable to the heirs for the value of the personal property belonging to the community at the time of the second marriage, unless it be shown that she has made an improper use of it. She is entitled to the deduction arising from the deterioration of the property while in her possession as usufructuary.

The surviving widow and natural tutrix having lost the usufruct by contracting a second marriage, becomes accountable to the heirs for the rent of lands occupied by her and belonging to the community. But if it be shown by evidence that, owing to the existence of a state of war in the country, the lands could not be worked, and therefore they were not cultivated for a period of three years, she is not accountable for the rent nor interest on the same for that period of time.

APPEAL from the Parish Court of Morehouse parish. *James Bussey*, Parish Judge. *Newton & Hall*, for the minor M. E. Davis, appellee. *Thomas O. Burton*, for tutrix, appellee. *D. C. Morgan*, for opponent and appellant.

TALIAFERRO, J. This suit grows out of an opposition to the account of tutorship furnished an emancipated minor by her mother and natural tutrix. The opponent, in his capacity of executor of his father, shows that he is a judgment creditor of Mrs. Frances A. Davis, the tutrix, in the sum of forty-five hundred dollars; that he caused execution to issue upon the judgment; that certain lands, comprising all the real estate of the defendant, were seized and sold at sheriff's sale on the fourth of September, 1869, when he became the purchaser. He charges that the rendition of this account of tutorship is made in fraud and collusion between the tutrix and the emancipated minor, by which they aim to establish a large indebtedness of the tutrix wholly fictitious, in order to obtain a decree of legal mortgage on the property of the tutrix, that shall antedate the opponent's judgment and deprive him of the lands purchased in satisfaction of his just claims against the tutrix in her individual capacity. He opposes all the items charged as indebtedness, and prays that the credit side of the account be increased by charges against the minor for board, clothing, etc., taxes, law charges and medical services.

The account was filed on the sixth of September, 1869, and presents a balance due the minor of $16,971 50.

An opposition was also filed on the part of the minor, claiming interest on her revenues as they accrued and were received by the

tutrix, and objecting to the charges against her for board, education, clothing, etc., as extravagant and unjust.

After the introduction of much evidence and a full investigation of the account the opposition of the executor was, to a considerable extent, sustained, and the account was reduced, by the decree of the court, to $7050 21, and judment was rendered against the tutrix and in favor of the minor for that sum, with five per cent. interest from date of the judgment, with recognition of legal mortgage on all the property of the tutrix as security for its payment. From this judgment the executor and opponent has appealed.

The facts elicited by this controversy seem to be that Stephen C. Davis, the minor's father, died in the year 1858, leaving as his sole heirs John A. Davis and Mattie E. Davis, the minor who figures in this controversy. The widow and mother of these heirs was confirmed natural tutrix of the daughter on the twenty-fifth of September, 1858. John A. Davis died in October, 1861, leaving his mother and his minor sister as his heirs. An inventory of the property of the community between Stephen C. Davis and his wife, was made in the latter part of the month of September, 1858. There was no separate property of either of the parties. No inventory or proceedings seems to have been taken in regard to the estate of John A. Davis, which consisted very nearly, if not entirely of his interest in his father's part of the community.

Early in January, 1862, the widow, Mrs. Frances A. Davis, contracted a second marriage. The property of the succession, as shown by the inventory, consists of a tract of land containing four hundred arpents, and of two other tracts, one of one hundred and thirty-six acres, and the other of one hundred and seventy-two acres. The four hundred arpent tract embraces a plantation containing, at the time of the inventory, two hundred acres in cultivation, which seems to have been afterwards enlarged to two hundred and fifty acres. Nineteen slaves were appraised, the crop of corn and cotton of 1858, ten head of horses and mules, three pair oxen, cattle, hogs, farming utensils, etc., the whole valued at forty-two thousand seven hundred and twenty-six dollars.

There are two bills of exceptions in the record, taken by the counsel for the opponent, one relating to a rule of evidence, the other to rules of practice. In the decision of this case we think it not important to examine them.

In a review of the judgment of the lower court we find that, in our opinion, it should be altered in several important respects. The judgment makes the tutrix account for seven-sixteenths of the estimated value of the corn and cotton crop of 1858, the year in which Stephen C. Davis died. The date of his death is no where found in the record, but we find the usual mortuary proceedings, consequent upon his

decease, were commenced in the probate court of Morehouse parish on the twenty-fifth of September, of that year. It is fair to suppose that he died about the middle of the month.

In the usual course of planting operations in this country the crops of corn and cotton are not gathered in at that time of the year, or at least only partially so. No notice, as appears by the inventory taken on the twenty-ninth of September, is made of any portion of either corn or cotton being gathered. The corn is referred to as "the crop on the plantation," and the cotton crop as "estimated in its present state." In the absence of any evidence to the contrary we conclude that the crop of cotton and corn was standing in the field at the time of the opening o. the succession. This being the case, the crop belonged to the surviving widow in community, who was entitled to the usufruct of the community property until the second marriage. Act of March 25, 1844. Article 538 of the Civil Code provides that, "The natural fruits, or such as are the produce of industry, hanging by branches or by roots, at the time when the usufruct is open, belong to the usufructuary."

The next item we think should be reduced. The decree awards to the minor seven-sixteenths of the inventoried value of the personal property. The widow was entitled to the usufruct of the personal property during the three years of her widowhood, to wit: During the years 1859, 1860 and 1861. The deterioration of the personal property during its use for three years, lessened its value very considerably. For this she is not accountable, as it is not shown she made an improper use of it. It is shown by the testimony of an experienced planter, that the value of the work animals depreciated during that period forty per cent., and the reduced value of all the other personal property is shown.

At the time of the second marriage the widow, having lost the usufruct of the property, should have caused it to be sold according to law. Civil Code, article 333. Not having complied with the law in this respect, the tutrix should account for seven-sixteenths of the value of the personal property at the time of her second marriage, which, from the evidence, we assume to have been $987, *seven-sixteenths of which is* $431 90.

The succeeding items, after the one just examined, running to No. 9, inclusive, should be stricken out. They are made up of annual charges for rent of land, and hire of slaves for the years 1862 and 1863; and for rent of land for the years 1864 and 1865, and calculations of interest accruing annually upon balances due the minor after deducting her annual expenses. Charges for the hire of slaves are not recoverable.

The testimony does not, in our opinion, warrant the charges allowed for rent of land during the four years last mentioned. One witness thinks lands in order for cultivation during that period, were worth

a dollar an acre rent; another that lands during that time could not have been rented at all for gold or legal currency, and a third, that for rent they were worth nothing. A state of war prevailed. The usual labor for cultivation could not be obtained, and the fields were in a great measure, during a large part of the time, idle and uncultivated. No revenues consequently were derived from the lands from the beginning of the year 1862 to the year 1866, the war having ended during 1865. Taking the annual expenses of the minor at $300, as found by the judge, and as we think correctly, there would be no balance due the minor upon which interest would run until the end of 1867. The amounts allowed by the lower court for rent of land for the years 1866, 1867, 1868 and 1869, we think sustained by the evidence. The charge against the tutrix for three-fourths of two years wages, claimed as due John Davis for overseeing and interest on the amount ($900), should not have been allowed. No such charge appears upon the account opposed, and the evidence shows that John Davis managed the affairs of the plantation, disposed of the crops, received the proceeds, bought slaves for himself, and distributed the money received. There is no evidence whatever that there was anything owing him for overseer's wages. The last item allowed by the court, " commissions on amount of annual revenues," being cast upon an erroneous amount must be rejected.

It is ordered, adjudged and decreed, that the judgment of the parish court be annulled, avoided and reversed. It is further ordered, adjudged and decreed, that the emancipated minor, Mattie E. Davis, recover from her mother and late tutrix the sum of $1909 85, with five per cent. interest thereon from the day of the rendition of her account of tutorship, with recognition of legal mortgage upon all her real estate to date, and to take effect from the day of her appointment as tutrix; the costs of these proceedings to be sustained by the emancipated minor. This judgment being rendered on the following basis:

The tutrix is charged with seven-sixteenths of the value of the personal property on the first January, 1862......... $431 90
Amount rent of land for the year 1866...................... 1050 00
Interest on $732 for two years, being excess of revenues over expenses at the end of the year 1867, five per cent. per annum........................................... 73 20
Rent of land for the year 1867.......................... 1050 00
Interest for one year on $435, at five per cent., being excess of revenue over expenses end of year 1868............... 21 75
Rent of land for the year 1868........................... 735 00
Rent of land for the year 1869........................... 735 00

$4096 85

The tutrix is credited as follows :

Expenses of the minor, eight years, at $300 per year..$2400 00

Ten per cent. commissions on amount of annual
revenue......................................... 3570 00

——— $2757 00

Balance due the minor............................. $1339 85

The court amends its decree by awarding the minor
the additional amount of five hundred and
seventy dollars, the value of the stock of cattle
and hogs, not accounted for by the tutrix...... 570 00

$1909 85

Rehearing refused.